The first point made by the appellants is that the judge who presided at the trial erred in refusing a nonsuit. According to the practice of the English courts, a plaintiff can not be nonsuited on the trial against his assent, but may insist on the cause going to the jury, and thus take his chance of a verdict. (Grah. Pr. 2d ed. 311, and the cases there cited.) With us, however, a plaintiff may be compelled to be nonsuited on the *Page 549 
trial, when the evidence offered by him is clearly insufficient to support his action, there being then no question of fact to be decided by the jury. This power of the courts to nonsuit the plaintiff, results from their being the judges of the law in the case, when no facts are in dispute. (Pratt v. Hall, 13John. 334.)
If the evidence will not authorize the jury to find a verdict for the plaintiff, or if the court would set it aside if so found, as contrary to evidence, it is the duty of the court to nonsuit the plaintiff; but the court "should be extremely cautious on the subject of interfering with the province of the jury," who by the principles and plan of our jurisprudence, have exclusive jurisdiction over the facts of a case. (Stuart v.Simpson, 1 Wend. 376.) The case under consideration did not come within the above general rules, nor authorize the judge to take it from the jury. The testimony of Bogardus, if true, clearly proved an unjustifiable assault and battery by both the defendants upon the plaintiff; and even if the testimony of Fox was to be considered as conflicting with that of Bogardus, this circumstance did not diminish the necessity of sending the cause to the jury, whose peculiar duty it was to weigh conflicting testimony, and the degree of credit due to witnesses.
The appellants' second point is that the judge erred in refusing to direct a verdict in favor of Sylvester Koplin, one of the defendants. The answer to this point is included in that given to the first point. There certainly was some evidence against Sylvester; if so, the judge had no power to discharge him. The rule on this subject is that in actions for tort against several, if on the conclusion of the plaintiff's case it appears that there are some defendants against whom no evidence has been given, they may be discharged, or rather acquitted, and examined as witnesses for the other defendants. This is allowed to avoid the consequences of the improper joinder, by the plaintiff, of persons, merely for the purpose of depriving the defendants of their testimony as witnesses. But if there be any, even the slightest evidence against them, they can not be discharged before the rest, and the case must go altogether to the jury. (1Phil. Ev. Dunlap's ed. of 1816, p. 61. Brown v. Howard, 14John. 119 *Page 550 per Thompson, J. 122. Hoar v. Clute, 15 Id. 23. Bates
v. Conkling, 10 Wend. 389, Savage, Ch. J. 392.) These authorities clearly show that the judge had no right to discharge Sylvester, even if a motion for that purpose had been made in time. But we have seen that the practice alluded to is adopted during the trial, while the judge has control over the proceedings, and for a purpose to be accomplished on the trial. When the trial ends the object of the practice ceases; the necessity for the judge to exercise his power over the parties and proceedings is much diminished. After the cause is submitted to the jury and they have retired to deliberate on their verdict, they have a complete jurisdiction over the facts and over their verdict. And the judge is certainly under no judicial obligation to direct them who to convict or who to acquit.
On the return of the jury with a general verdict for the plaintiff against both defendants, the counsel for the defendants requested the judge that the jury might be polled by asking them if that was their verdict "against each" and bothdefendants — which the judge refused to permit; and such refusal constitutes the subject of the appellants' third point. It is a general rule, that no verdict is of any force but a public verdict given in open court; until that is received and recorded there is no verdict. When the jury come to the bar to deliver their verdict, all or any of them have a right to dissent from a verdict to which they had previously agreed. (Root v.Sherwood, 6 John. 68.) A verdict is not recognized as valid and final until it is pronounced and recorded in open court: the jury may change their mind and disagree to their verdict after they have pronounced it in open court before it is received and entered on the minutes. After a verdict is rendered or announced and before it is entered, the jury may be examined by the poll, if the court please, and either of them may disagree to the verdict. (Blakely v. Sheldon, 7 John. 32.) The expression in the last case, "if the court please," would seem to imply that the polling of the jury was in the discretion of the court; but in the case of Fox v. Smith, (3 Cowen, 23,) andJackson ex dem. Fink and others v. Hawks, (2 Wend. 619,) it is decided to be the absolute right of *Page 551 
a party to have the jury polled on their bringing in their verdict, whether it be sealed or oral, unless he has expressly agreed to waive that right. The object of polling a jury is to ascertain if the verdict which has just been presented or announced by their foreman is their verdict, or in other words if they still agree to it; not to ask them what their verdict means, nor to question them as to their intention in finding it. This is performed by the clerk, who, as he calls over the list of jurors, asks them one by one, or by the poll, the simple question, "Is this your verdict?" This question requires but one answer, and still embraces all the legitimate objects of polling a jury. The party has no right to dictate the manner in which a jury shall be polled, or to insist on any other question being put to them, than the simple one to ascertain whether they agree to the verdict as presented. In the case under consideration the verdict announced was clearly against both defendants, and the question proposed to be put to the jury was not only unusual, but seemed to require an explanation of the verdict. It was in substance asking them whether they intended or designed the verdict to be against each and both of the defendants. Such a departure from the established practice can produce no good result, and may lead to much evil, and the judge did right in refusing to permit it. There is no error in any of the decisions of the judge at the trial; and the objections to them derive their title to grave consideration principally from the fact that they have been pertinaciously pressed through the several stages of judicial investigation, until they are brought to the court of last resort.
Judgment affirmed *Page 552