[849 NYS2d 52]

ELEANOR DUFFY, Respondent, v JAMES M. VOGEL et al., Appellants.

First Department, December 20, 2007

### APPEARANCES OF COUNSEL

*Aaronson, Rappaport, Feinstein & Deutsch, LLP*, New York City (*Anthony J. Connors* of counsel), for James M. Vogel and another, appellants.

*Heidell, Pittoni, Murphy & Bach, LLP*, New York City (*Daniel S. Ratner* of counsel), for Allan J. Jacobs, appellant.

*Jonthan M. Landsman*, New York City, for respondent.

### OPINION OF THE COURT

KAVANAGH, J.

Plaintiff commenced this medical malpractice action claiming she sustained permanent injuries as a result of the two defendant physicians' failure to detect, diagnose and properly treat a granular cell tumor found in her pelvic area. The jury ultimately concluded that neither defendant was negligent, but did find that two nonparty physicians were responsible for plaintiff's injuries and set the amount of her damages at $1.5 million. After the foreperson announced the verdict in open court, the trial court denied plaintiff's request that the jury be polled, discharged the jury and directed the Clerk to enter a verdict in favor of defendants. Subsequently, the trial court granted plaintiff's motion to set aside the verdict on the grounds that it had committed reversible error by failing to poll the jury as requested.

Upon completion of the trial, during which each side made extensive use of expert testimony, the trial court prepared a verdict sheet containing 21 interrogatories to be used by the jury in its deliberations. Questions 1-10 inquired about the legal responsibility of the named defendants. Questions 11-16 focused on two nonparty physicians who had treated plaintiff during the period in question and who were added to the verdict sheet at the request of defendants. Questions 17-18 addressed plaintiff's responsibility, while questions 19 and 20 asked the jury, if appropriate, to allocate responsibility among the various individuals named at trial and to make an award for damages in light of those findings.

The jury found that neither defendant was negligent. Although instructed not to proceed any further in its deliberations if it made such a finding, the jury chose to answer the remaining questions on the verdict sheet. Specifically, it found that

both nonparty physicians were negligent and that their negligence caused plaintiff to incur damages in the amount of $1.5 million.[1] The jury also found that plaintiff was negligent, but that her negligence was not a substantial factor in causing her injury. In addition, the jury's verdict, as announced by its foreperson, was in all respects unanimous.

Plaintiff initially claimed that the verdict was inherently inconsistent and asked that the trial court so instruct the jury, and have it reconvene to continue its deliberations. When the trial court refused this request, plaintiff asked that the jury be polled. The trial court stated that it saw no need, given the manner in which the verdict had been delivered, and it denied plaintiff's request. It then discharged the jury, and entered judgment for defendants. On plaintiff's subsequent motion, the trial court set aside the verdict on the ground that it had committed reversible error by not polling the jury as requested by plaintiff.

The process by which this verdict was delivered leaves no doubt but that the jury unanimously concluded that neither defendant had committed malpractice while treating plaintiff. The verdict was announced and published in open court. At that time, the foreperson was asked to recite, in the presence of each member of the jury, the jury's answers to the interrogatories contained on the verdict sheet. The court clerk read aloud each interrogatory, and in response the foreperson announced the jury's finding. A total of 16 questions were posed by the court clerk to the foreperson and to each, the foreperson announced the jury's answer.[2] In addition, the clerk asked the foreperson 14 times what the jury's vote was on a particular interrogatory, and each time the foreperson publicly announced that the jury's decision was unanimous. At no time while this verdict was being delivered did any member of the jury give any indication that he or she had an exception, objection or reservation as to any of the answers given by the foreperson to any of the interrogatories on the verdict sheet.

The jury's verdict as announced and published in open court was an accurate reflection of what each juror had by his or her

---

**1.** The jury found that one of the nonparty physicians was 60% liable while the other was 40% liable. It awarded $1,000,000 for past pain and suffering and $500,000 for future pain and suffering and indicated that plaintiff would endure this pain for five years into the future.

**2.** The questions included five separate inquiries regarding the jury's percentage allocation of responsibility that it assigned to the five individuals (plaintiff, two defendants, and two nonparty doctors) on the verdict sheet.

own hand affirmed on the verdict sheet. Each juror's vote was recorded on the verdict sheet for every interrogatory that was answered, and, after each interrogatory, each juror signed affirming his or her support for the answer as recorded. Each answer, as recorded on the verdict sheet, conformed in every respect to each answer given by the jury through its foreperson in open court. Under all of these circumstances, polling the jury would have simply confirmed what had already been stated in open court and recorded on its verdict sheet; that being that defendants were not legally responsible for any of the claims made against them by plaintiff.

The issue to be decided on this appeal is not whether the plaintiff had an "absolute right" to have the jury polled after it published its verdict. She clearly did and it was error on the part of the trial court not to conduct one. What this Court must decide is whether, on these facts, it was an error of such magnitude that it served to render all that had occurred before it during this three-week trial a nullity. If failing to poll the jury was merely an error in form and not substance having no impact on the outcome of these proceedings, and neither party has demonstrated prejudice then the interest of justice would not be served by setting this verdict aside. Here, the objective facts set forth amply demonstrate that polling the jury would not have resulted in a different verdict. That opinion is not based upon intuition; rather it is based upon a fair reading of what transpired in open court and what is unambiguously set forth in the jurors' own handwriting on their verdict sheet. Throughout, each time the jury was asked it stated in no uncertain terms through its foreperson that it was of the collective view that defendants were not liable, and in that view, the jurors were all of the same mind and unanimous.

A fair reading of the record simply does not support the rigid application of a rule, as urged by the defense and adopted by the dissent, that would mandate reversal regardless of the surrounding circumstances or that would lead to what is undoubtedly an unfair result.

Moreover, the dissent's reliance on the opinion it authored in *Matter of National Equip. Corp. v Ruiz* (19 AD3d 5 [2005]) is misplaced. There, the trial court's failure to poll the jury after it had delivered its verdict was but one of many errors committed in the recording of the verdict. Not one, but two verdicts were rendered during the course of that trial and the one which was ultimately entered into the record by the court was never shown

to either of the attorneys, or announced or published by the jury in open court. In fact, the jury's answers as recorded on that verdict sheet were never entered into the official record. Adding to the confusion that surrounded the taking of that verdict was the fact that the trial judge, after taking the second verdict, which again found for the plaintiff, entered judgment in favor of the defendants because of an error on the verdict sheet. One week later, long after the jury had been discharged, the trial court sua sponte vacated the judgment it had entered for the defendants and substituted one for the plaintiff consistent with the jury's findings as set forth on its first verdict sheet. Given the chaos that characterized those proceedings—and the confusion and uncertainty that surrounded the taking of those two verdicts, polling the jury would actually have served its intended purpose. Suffice it to say, the uncertainty that permeated the proceedings in *National Equipment* stands in stark contrast to what happened in the matter that is now before this Court.

Setting aside this verdict simply and solely because the jury was not polled—when it is abundantly clear that polling would have made no difference in the result—would, under these facts, lead to a result which by any measure is unconscionable. There can be no doubt that the jury, after hearing all of the evidence that was presented during this vigorously contested trial, concluded that defendants were not negligent, and therefore not responsible for any of the injuries claimed by plaintiff. To deprive defendants of the benefit of this verdict—one that was fairly earned and entered—for an error not of their making or one for which they bear any responsibility, would, on these facts, be grossly unfair. Moreover, the integrity of this entire process would, in our view, be ill-served by this Court's sanction of such a result.

I cannot agree that a denial of one's "absolute right" to poll a jury requires the automatic nullification of the jury's verdict and would never be subject to a harmless error analysis. While the dissent suggests that a court could never hold that the denial of an absolute right was harmless, this Court has so held (*Matter of Eric W.*, 182 AD2d 439 [1992] [the court's refusal to allow appellant to invoke his absolute right to waive his presence at a *Wade* hearing was harmless error]).

Nor has plaintiff established that the verdict as delivered was inherently inconsistent. While the jury may have misinterpreted an instruction on the verdict sheet, and, as a result, answered

certain interrogatories unnecessarily, the answers given were not only consistent with each other, but were also supported by the weight of the credible evidence (*see e.g., Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31, 40 [1980]; CPLR 4404 [a]). Furthermore, since the jury, by its verdict, completely absolved defendants of any malpractice, plaintiff was not prejudiced by the inclusion of the nonparty doctors on the verdict sheet.

Accordingly, the order of the Supreme Court, New York County (Donna M. Mills, J.), entered March 7, 2007, which, after a jury trial, granted plaintiff's motion to set aside the verdict and declare a mistrial, should be reversed, on the law, without costs, the motion denied and the verdict reinstated. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

CATTERSON, J. (dissenting). Because I find no ground whatsoever to depart from the bedrock principle that a litigant has an absolute right to have a jury polled prior to judgment being entered pursuant to a jury verdict, I must strenuously dissent. This position is an extremely difficult one, as I have no doubt that the jury's responses to the special interrogatories indicated that the physicians committed no malpractice. Unfortunately, the trial judge's inexplicable refusal to poll the jury necessarily requires a new trial.

At the conclusion of the medical malpractice trial, the court submitted to the jury a series of special interrogatories in support of a general verdict pursuant to CPLR 4111 (c). It is uncontested that the parties were entitled to a general verdict rather than a special verdict under CPLR 4111 (a).

After the jury announced that it had reached a verdict, the jury was returned to the courtroom. The foreperson related to the court that the jury answered each special interrogatory unanimously, and that the jurors affixed their signatures in concurrence following each response. A signature line appears on the verdict sheet for anyone who did not concur in the result, but in every instance, it was blank.

The first question was whether the defendant Dr. Vogel departed from accepted standards of medical care by not ordering an imaging study of the plaintiff's pelvic area in the year 2000. The jury responded that he did not. The jury then skipped the interrogatory as to proximate cause pursuant to the instructions thereon.

Next, the jury considered whether Dr. Vogel departed from accepted medical standards by not performing a more thorough history, by not performing a more thorough physical examination of the plaintiff's buttock, and by not conducting a neurological exam. The jury found that he did not, and again skipped the proximate cause interrogatory.

Interrogatory 5 asked whether the defendant Dr. Jacobs departed from accepted standards of medical care by not ordering an imaging study. The jury decided that he had not. It then skipped the proximate cause interrogatory.

Next, the jury responded to interrogatory 7, indicating that Dr. Jacobs did not depart from accepted medical standards by not performing a biopsy. It again skipped the proximate cause interrogatory.

Similarly, in response to interrogatory 9, it found that Dr. Jacobs did not depart from accepted standards in discussing his findings and referring the plaintiff to Dr. Neuwirth. The proximate cause interrogatory, interrogatory 10, was skipped. But the instructions following number 9 indicate that the jury should have proceeded to question 11 only if it previously answered yes to questions 2, 4, 6, or 8, all of which are proximate cause interrogatories. All of these interrogatories were skipped pursuant to instructions on the verdict sheet. Yet, contrary to the instructions, the jury proceeded to interrogatory 11.

The next four interrogatories involved the culpability of nonparty Dr. Feuer for not ordering imaging studies on April 12, 2000, and September 8, 2000, and were inserted pursuant to CPLR article 16. The jury unanimously found that a departure occurred in each instance, and that the departures were a substantial factor in the plaintiff's injuries.

The jury was then asked whether nonparty Dr. Liebeskin deviated from accepted care in his read of the CT scan in 1996. All jurors found that he had, and that this was a substantial factor in the plaintiff's injuries.

The jury then apportioned each individual's fault. No apportionment appeared for Drs. Vogel and Jacobs, or for the plaintiff. Dr. Feuer was found 40% responsible, and Dr. Liebeskin, 60% responsible. The jury found that the plaintiff's damages were $1,000,000 for past pain and suffering, and $500,000 in future pain and suffering, over the next five years.

It is uncontested that the verdict was read in open court. Each special interrogatory was posed to the jury, and the

foreperson responded to each question, specifying that the decision was unanimous in each instance. The plaintiff initially requested that the jury be sent back to reconsider the verdict, claiming that it was inconsistent in that the named defendants were found not liable. The plaintiff's counsel contended that "[t]he jury clearly intended to award my client a million and a half dollars. They haven't the faintest idea they have not done so." He also claimed that the verdict was inconsistent to the extent the jurors found that Dr. Vogel did not commit malpractice but Dr. Feuer did.

It is uncontroverted that at that point the plaintiff requested that the jury be polled. The court responded "[a]ll of the responses were unanimous. You want to hear each one say that? . . . The verdict sheet speaks for itself. It really is not necessary." The court then immediately discharged the jury. I believe that this was a both fundamental and egregious error which requires a new trial and would vote to affirm the trial court's subsequent order to that effect.

In *Matter of National Equip. Corp. v Ruiz* (19 AD3d 5, 12 [2005]), we held that "it is now hornbook law that a jury verdict must be announced in open court, that the parties have an absolute right to have the jury polled, and that once so published in open court, the verdict must be entered by the court clerk in the official minutes of the proceedings." (Citing *Root v Sherwood*, 6 Johns 68, 69 [1810] and *Blackley v Sheldon*, 7 Johns 32, 33-34 [1810]; *see also Labar v Koplin*, 4 NY 547 [1851] [polling is an absolute right of a party and not a matter of discretion]; *Muth v J & T Metal Prods. Co.*, 74 AD2d 898 [1980].) Unquestionably, the plaintiff's right to have the court poll the jury was violated in the case at bar.

The majority, while in agreement that the right to poll a jury is an absolute right, nevertheless holds that the denial of the absolute right here was harmless error. In other words, a party has a right to poll a jury *except when it does not*, that is when a court deems that polling a jury would not change the verdict. In my opinion, such a holding is a contradiction in terms which, if allowed to stand, means we have impermissibly converted an absolute right into a conditional one. (*See Wall v Beach*, 20 App Div 480, 481 [3d Dept 1897] [an absolute right is one accorded without terms and conditions].)

In concluding that the denial of the plaintiff's request to poll the jury was harmless error, the majority ignores the purpose of such a poll:

> "to give each juror an opportunity, before the verdict [*sic*] is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he had not fully assented." (*United States v Jefferson*, 258 F3d 405, 411 [2001], *cert denied* 534 US 967 [2001] [citation and internal quotation marks omitted].)

The signatures of each juror on the verdict sheet are insufficient to provide the assurance that each has "fully assented" to the verdict.

In my view, the majority's 180-degree turn on our explicit holding in *National Equipment* two years ago is precluded by stare decisis. Moreover, for reasons set forth more fully below, to deem the denial of the right to poll a jury harmless is a position that can be based only on clairvoyance, not on any findings of fact or legal principles.

At the outset, I note that the doctrine of stare decisis should preclude any reconsideration of the explicit holding of *National Equipment*, that the right to poll the jury is an absolute right.

> "Stare decisis is the doctrine which holds that common-law decisions should stand as precedents for guidance in cases arising in the future, that a point of law, once decided by a court, will generally be followed in subsequent cases presenting the same legal problem. The doctrine rests upon considerations of practicality and principle" (*People v Damiano*, 87 NY2d 477, 488 [1996, Simons, J., concurring)].)

The Court of Appeals has made it clear that, with respect to the High Court,

> "stare decisis is a rule of legitimacy. Courts, unlike the other two branches of government, do not derive their authority by electoral mandate and they are not expected to respond to the popular will or public emotions. Indeed, their influence rests in large part upon the understanding that unelected Judges are motivated by principle and that they exercise their power evenhandedly, setting aside personal views and extraneous influences to follow precedents and develop the law in an ordered

fashion. The concept of legitimacy is fundamental to the exercise of judicial power, for the courts have little to compel adherence to their decisions except the respect accorded to them by the public borne of the integrity of the decision-making process. A high court which uniformly adheres to its prior interpretation of a statute in a line of cases only to reconsider those precedents and overrule them in a legally indistinguishable but factually egregious case will surely and deservedly lose its credibility and provoke serious questions about the legitimacy of its processes." (*Id.* at 489.)

This Court has acknowledged that that doctrine is equally applicable to intermediate appellate courts. "The doctrine of stare decisis stands as a check on a court's temptation to overrule recent precedent. Only compelling circumstances should require us to depart from this doctrine." (*People v Aarons*, 305 AD2d 45, 56 [1st Dept 2003], *affd* 2 NY3d 547 [2004], citing *Cenven, Inc. v Bethlehem Steel Corp.*, 41 NY2d 842, 843 [1977].)

This case falls squarely within the rationale for the application of stare decisis articulated by the *Damiano* court. It is a factually egregious case that is legally indistinguishable from *National Equipment*. That it is factually distinguishable, as the majority points out, is irrelevant. To overrule *National Equipment* two years after it was decided will surely harm the court's "credibility and provoke serious questions about the legitimacy of its processes." (*Damiano*, 87 NY2d at 489 [Simons, J., concurring].)

Furthermore, the majority's contention that an "absolute right" is subject to harmless error analysis is utterly devoid of support. No New York case has so held.* To employ a harmless

---

* I believe the majority is mistaken in its reliance on *Matter of Eric W.* (182 AD2d 439 [1992].) The right at issue in that case is a defendant's *right to waive* his/her Sixth Amendment right to be present for all stages of a trial. However, *Eric W.* relies on *People v Huggler* (50 AD2d 471 [3d Dept 1976]) for holding that a court's denial of that right to waive is harmless error. The confusion arises because while the *Eric W.* court loosely labels the right an "absolute" one, it is quite clear from *Huggler* that the right of waiver is not an absolute or fundamental one, but is conditional. (*See Huggler*, 50 AD2d at 474 ["a defendant may waive his right to personally appear . . . *provided* that such right has been relinquished knowingly, voluntarily and intelligently" (emphasis added)].) Certainly, no such condition exists in order for a litigant to exercise his/her right to poll a jury. Thus, I would contend that *Matter of Eric W.*, the single case on which the majority relies for the proposition that

error analysis is an essential contradiction in terms and would defeat the essential purpose of the right: "the jury should be enabled to avail themselves of the *locus p[o]enitentiae,* and correct a verdict which they have mistaken, or about which, upon further reflection, they have doubt." (*Blackley,* 7 Johns at 33-34; *see Brigham v Olmstead,* 10 AD2d 769 [3d Dept 1960].) It is beyond cavil that no such opportunity to correct a verdict can be reconciled with a harmless error analysis. It is simply impossible, short of clairvoyance, to decide that no juror in this case would change his or her mind upon being polled facing the litigants in open court.

MAZZARELLI, J.P., and SAXE, J., concur with KAVANAGH, J.; SULLIVAN and CATTERSON, JJ., dissent in a separate opinion by CATTERSON, J.

Order, Supreme Court, New York County, entered March 7, 2007, reversed, on the law, without costs, plaintiff's motion to set aside the verdict denied and the verdict reinstated. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

---

denial of an absolute right may be harmless error, is not a suitable precedent for its holding.

Even if *Eric W.* was applicable, it nonetheless stands for the proposition that the person who is capable of asserting a right has the concomitant right to waive it. The only comparable analogy for the instant case would be where the plaintiff wished to waive the polling of the jury: the exact opposite of the facts presented here.